Etta Roth, Respondent, v. National Automobile Mutual Casualty Company, Appellant.

First Department, July 14, 1922.

Insurance — automobile indemnity insurance — action against insurance company by person injured after return of execution against assured unsatisfied — policy provided that person injured in case of insolvency or bankruptcy of assured might maintain action against company " under the terms of the policy " — failure to co-operate by assured after accident, if it constitutes defense, was not shown.

In an action by a person injured by an automobile against an insurance company to recover the amount of the judgment secured against the assured on which an execution was returned unsatisfied, the defense was interposed that the assured failed to co-operate with the insurance company after the accident and that, therefore, under the terms of the policy, the insurance company was not liable to the injured person. The policy provided that, in case of the insolvency or bankruptcy of the person insured, " an action may be maintained by the person injured against the company under the terms of the policy." It was also provided that " The assured whenever requested by the company, shall aid in effecting settlements," etc.

Held, without deciding whether or not the failure by the assured to co-operate with the insurance company after the accident constitutes a defense in an action brought by the injured party against the company, failure to co-operate was not shown, where it appears that such failure to co-operate was based on the fact that the assured signed two statements, one for the insurance company to the effect that he did not authorize his chauffeur to take the car, and the other given to the attorney for the injured party to the effect that he did authorize his chauffeur to take the car; that the assured did not understand English, and that on the trial of the action he denied that he had given his chauffeur authority.

Laughlin, J., and Clarke, P. J., dissent, with opinion.

Appeal by the defendant, National Automobile Mutual Casualty Company, from an order and determination of the Appellate Term of the Supreme Court, First Department, made on the 22d day of December, 1921, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Second District, in favor of the plaintiff, and also from said judgment of the Municipal Court of the City of New York.

*Thomas E. Brownlee* [*Theodore H. Lord* of counsel], for the appellant.

*Charles S. Rosenthal* [*Harold R. Medina* of counsel; *George M. Curtis, Jr.,* and *Leander I. Shelley* with him on the brief], for the respondent.

GREENBAUM, J.:

The action is brought against the defendant to recover the amount of a judgment obtained by the plaintiff against one Ignatz Friedman, arising from injuries alleged to have been sustained by her and occasioned by the negligence of his chauffeur in driving his automobile. At the time of the accident Friedman held a policy of insurance in the defendant company, which insured him against loss by reason of any liability attaching to him in the operation of the automobile in question.

The defendant's answer alleges that subsequent to the accident Friedman " violated and breached the terms of said policy and that due to such breach the defendant disclaimed all liability on said policy." The policy contains the following clause: " The insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy and in case of such insolvency or bankruptcy an action may be maintained by the person injured against the company *under the terms* of the policy." (Italics ours.)

The clause just quoted was embodied in the policy pursuant to section 109 of the Insurance Law, which defines the standard provisions for liability policies, and which compels the insurance company to write into its policy a clause of the tenor of the one just quoted. (See Insurance Law, § 109, added by Laws of 1917, chap. 524, as amd. by Laws of 1918, chap. 182; since amd. by Laws of 1920, chap. 563.)

There is no dispute that in this case execution was duly issued against the assured upon the judgment obtained by the plaintiff against him; that it was returned unsatisfied and that the assured was insolvent.

The defendant's counsel in his brief states that " the concrete question before this court is simply this: Can an assured after an accident, covered by an outstanding insurance policy mulct the insurance company by cooperating with the plaintiff in the personal injury action against himself, transfer all of his property and so claim that he is insolvent in order that the plaintiff in the personal injury action may collect directly from the insurance company." It may be stated right here that if the plaintiff colluded with the

assured for the purpose of enabling her to obtain a judgment against him, it would seem to be clear that in such a case her act would be a fraud, sufficient to defeat a recovery against the company. But as matter of fact there is no such issue tendered by defendant, and there is no proof of any collusion or co-operation between the plaintiff and Friedman, the assured.

The sole issue was, whether the assured failed to co-operate with the company, and whether such failure was a non-compliance with one of the terms of the policy, which would have barred a recovery by him against the company, and hence would be a bar to a recovery by the plaintiff in this action.

The question thus arises: What is the meaning of the words " under the terms of the policy " in the clause above quoted? The respondent contends that they refer only to " the risks insured against by the terms of the policy, and when, according to the terms of the policy, it was in force at the time of the accident."

The appellant insists that they refer to every term of the policy which is obligatory upon the policyholder, and which, if the assured violated, would bar recovery by him and hence by the injured person suing under the policy. It seems to us that the Legislature did not intend to deprive the insurance company of any defenses which it could have properly urged against the assured under the provisions of the policy had he brought an action thereon.

The Legislature must, however, have had some cogent reasons for enacting section 109 of the Insurance Law. Plaintiff in its brief quotes from the appellant's brief, submitted to the Appellate Term, and to which he referred upon the oral argument before us without any suggestion on the part of the defendant's counsel that he had been incorrectly quoted, as follows: " The writer is reliably informed that section 109 was added to the Insurance Law on the advice of the present State Superintendent of Insurance and that it was never its intention to change the nature of a liability policy to one other than an indemnity policy and that the section was added, in order to eliminate evil, which was becoming a general practice among insurance companies, *i. e.*, the practice on the part of insurance companies with assureds, who were liable to pay a substantial amount for an injury sustained, to put the assured through bankruptcy, thereby precluding a recovery on the part of the injured by reason of the fact that an execution against the assured would be returned unsatisfied and the company then standing on a technical construction of the policy could claim, that, since it was an indemnity policy for loss occasioned to the assured, the assured having sustained no loss, there was nothing which the company could legally be called upon to pay."

If such were the reasons which moved the Legislature to enact section 109 of the Insurance Law, and if insurance companies heretofore indulged in the practice of colluding with policyholders to put them through bankruptcy in consideration of escaping liability under their policies, it would not be unreasonable to assume that they might not hesitate to escape liability to an injured person under the act by colluding with the assured after an accident by procuring him to do some act forbidden by the policy or to omit to do some act which he was obliged to do. It would thus be incumbent upon the court to scrutinize with great care any defense in a case like this, which is based upon the non-observance on the part of the assured of what may be called conditions subsequent, such as the plea of non-co-operation here urged.

The policy of insurance upon the subject of co-operation reads as follows: " The assured *whenever requested* by the company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at the assured's own cost, without the written consent of the company previously given, except that, as respects liability for personal injuries covered hereunder, the assured may provide at the company's expense such immediate surgical relief as is imperative at the time of the accident." (Italics ours.)

It is not claimed that the assured refused or neglected to aid the company as to any request made of him. What happened was this: Friedman signed a written statement to the insurance company upon its request, which reads in part as follows: " My son Julius came to me at 11 o'clock and wanted to know when I was going home? I asked him why? He said ' That Roth's sisters wanted to go home, and they wanted a ride.' I said to my son Julius that ' the car would have to stay there until I come home, and nobody can take the car.' He said 'All right,' and told the girls that I did not want them to have the car. At 11:30 P. M. somebody came in the hall and told me an automobile had an accident on Second avenue. I looked out on the street, right away, but I did not see my car, so I ran on the corner and I see my car there on the sidewalk and by a broken lamp post. I did not see the girls who were in the car, but somebody took the girls in a taxicab to the doctors. Mike the chauffeur was standing beside the car in the street. I asked him, ' What's the matter? What have you took the car? I told my son nobody could take the car, and I told you nobody could take the car without my being in it.' Mike told me that the

Roth sisters told him that she spoke to me, and that I gave her permission to use the car."

It further appears that Friedman had also signed a statement for the plaintiff's attorney which reads as follows: " I am the owner of the Chevrolet automobile in which an accident happened on the 22nd day of July, 1919, at about 11 P. M. in which Etta and Mildred Roth were passengers and that both Mildred and Etta Roth were injured. I told Michael Rosenblatt to take the girls in for a ride as he is a chauffeur and give him permission to use my machine."

It is clear that the assured falsified either in telling the company that his chauffeur had been notified not to take out the car excepting with his express permission, or in stating that he had given the chauffeur permission to use the car, unless he was tricked into signing one or the other of the statements.

It does not appear which of the statements signed by Friedman was true, nor was there any evidence showing under what circumstances either of these statements was prepared and signed. Friedman testified that he could read English " very little," and the record shows that his testimony was given through an interpreter. He also testified that he was at the office of defendant's attorney " ten or fifteen times; " that the statement first above mentioned was there prepared and signed by him. It appeared, however, that upon the trial of the negligence action Friedman repeated the statements contained in the paper signed by him for defendant.

The case was tried by the court without a jury, and the court having decided in favor of the plaintiff it must be assumed that he found that the defense of lack of co-operation was not established. We can find no reason for disturbing the conclusion which the court reached upon the facts.

The determination appealed from should be affirmed, with costs.

DOWLING, J., concurs; CLARKE, P. J., and LAUGHLIN, J., dissent.

SMITH, J.:

I concur in the result. I do not think that the failure of the insured to co-operate after the accident, not induced by plaintiff, constitutes a defense. To hold otherwise puts the plaintiff at the mercy of the owner who is presumptively hostile. This was not intended by the statute.

LAUGHLIN, J. (dissenting):

I deem it quite clear that the Legislature, in enacting and adding section 109 to the Insurance Law by chapter 524 of the Laws of 1917 and by the amendments made thereto by chapter 182 of the Laws of 1918 and section 10 of chapter 563 of the Laws of 1920,

authorizing an action on an automobile casualty insurance policy by a person injured or by the personal representative of one killed where there has been a recovery against the insured and an execution on the judgment has been returned unsatisfied on account of his insolvency or bankruptcy, did not intend to render the insurance company liable if it would not have been liable to the insured in the event that the judgment had been enforced in whole or in part against him. As I view the statute, the Legislature intended, in such case, to give a cause of action to the person injured or the personal representative of the decedent against the insurance company *on the policy* provided the assured could have recovered thereon for any liability enforced against him and covered by the policy. The insurance company for an adequate premium having, as between it and the assured, assumed liability to a certain extent, it was entirely competent for the Legislature in legislating for the regulation of the making of such contracts in the future, to provide, as it has provided, that such liability which would have entitled the assured to reimbursement if he had been obliged to pay the whole or any part of the judgment recovered against him, that is, if the injured plaintiff could not collect the judgment against assured so that assured might for his own reimbursement enforce the policy against it, then and in that event the plaintiff might have the benefit of the protection of the policy and maintain an action thereon. The court need not consider whether the Legislature in conferring this new right or cause of action deemed that there was collusion to any or to a considerable extent between the assured and the companies in such cases, or whether it deemed the legislation just without regard to collusion. In the case at bar the defendant issued such a policy to Ignatz Friedman on his automobile and through the negligence of his chauffeur in driving it the plaintiff was injured during the period covered by the policy. The policy imposed the duty upon the assured of giving the defendant written notice immediately in the event of an accident or loss covered by the policy with the fullest information obtainable at the time; and if a claim for damages was made upon him on account of the accident, it was his duty to give the defendant like notice thereof. It was also his duty at all times to " render to the company all co-operation and assistance within his power; " and if a suit was brought against him to enforce such a claim, he agreed to forward to the defendant the summons or other process as soon as served upon him; and the defendant assumed the duty of defending the action in his name or behalf. The assured was further obligated, whenever requested by the company, to aid in effecting settlements and in securing information and evidence and the attendance of

witnesses and prosecuting appeals, but he was prohibited from voluntarily assuming any liability and from interfering in any negotiation for a settlement or in any legal proceeding and from incurring any expenses or settling any claim, excepting at his own expense, without the written consent of the company. On the 3d of September, 1920, the assured made a statement to the defendant with respect to the circumstances under which the accident occurred, which was reduced to writing and signed by him. In that statement he claimed that at the time of the accident his chauffeur, in violation of his express orders, had taken the automobile from his place of business to give the plaintiff and her sister a ride. He testified on the trial of this action that he made a like statement to the defendant some fifteen times and that it was true and that he so testified in his own behalf in the plaintiff's action against him. It appeared, however, that at some time before the trial of that action — the date was not shown — he and his brother, who was in partnership with him, made and signed a statement in writing to the effect that he was the owner of the automobile in which the plaintiff and her sister were riding at the time they both sustained injuries and that he told his chauffeur to take them for a ride and gave him permission to use the automobile for that purpose. Evidently that statement was made for and delivered to the plaintiff or to her representative for it was introduced in evidence in her behalf on the trial of her action against the assured. It is a reasonable inference that the recovery was had primarily on the admissions of the assured contained in that statement, and that his version to the contrary as a witness in his own behalf was futile after he made those admissions. The defendant in this action, brought by virtue of said section 109 of the Insurance Law and the provisions of the policy thereby required to be inserted therein, pleaded the facts to which reference has been made as a defense and claimed thereon that the insured had failed to comply with his obligations to the defendant imposed by the provisions of the policy and that, therefore, he could not have recovered in an action thereon; and it attempted to show that it was led to assume the defense of the action against the assured on his representation to it with respect to his having forbidden the chauffeur to take the automobile and to the effect that he had not given any contrary statement to the plaintiff. The evidence offered with respect to the statements made by the assured to the defendant on that subject was excluded and it excepted. I am of opinion that the evidence should have been received, but, in any event, I think the recovery

43

cannot be sustained, for the assured by making the written statement, which, according to his testimony, was false, and causing it to be delivered to the plaintiff and thus enabling her to use it against him as an admission, instead of co-operating with the defendant and refraining from assuming any liability, as was his duty under the policy, he co-operated with the plaintiff and assumed full liability for the acts of the chauffeur.   I, therefore, vote for reversal and dismissal of the complaint.

CLARKE, P. J., concurs.

Determination affirmed, with costs.