ALFREDO RONDÓN, Plaintiff and Appellant, v. THE AETNA CASUALTY & SURETY COMPANY, Defendant and Appellee.

No. 5818. Argued January 12, 1934.—Decided April 30, 1934.

*Leopoldo Feliú* and *Miguel Olmedo* for appellant. *Hartzell, Kelly & Hartzell,* and *R. O. Fernández* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This case was commenced in the District Court of San Juan. Alfredo Rondón, represented by his father with *patria potestas,* José María Rondón, brought an action against The Aetna Casualty and Surety Co., a corporation engaged in the insurance business, organized in the State of Connecticut and authorized to do business in Puerto Rico, to recover $3,602.75,

the amount of a certain judgment rendered against Juan Basabe.

According to the allegations of the complaint, on February 13, 1926, in Santurce, the plaintiff was seriously injured by the bus "Palmira" belonging to the public carrier Basabe, as a consequence of which he brought suit and secured a judgment against Basabe for the sum of $3,000 as damages and the costs then fixed at $602.75. The judgment became final (*firme*).

Upon the date of the accident Basabe was insured by the defendant under a "liability policy" issued on February 14, 1925, to be effective until noon on February 14, 1926.

Said "liability policy or bond" to respond for the damages caused by the said public carrier to any person or property of others, was filed with the Public Service Commission of Puerto Rico as a prerequisite to the issuance of a certificate of convenience and necessity to the carrier. The defendant was obligated thereby not only to pay for the damages or injuries for which the insured public carrier might be found liable, but also the costs, disbursements, and interest for which the said public carrier might be liable as a result of litigation filed against him for damages caused to persons or property, as is stated in the following clauses of said policy and in the list of stipulations (*pliego de estipulaciones*) forming part thereof, to wit: Policy JA—3512794, of the Aetna Casualty & Surety Co. A. (1) the responsibility of the company under this policy shall be limited as is stated in paragraph A of the list of stipulations, which limitations shall be applicable to every automobile covered by this policy. (2) In addition to the limitations set forth in paragraph A, of the list of stipulations, the company will pay all of the expenses arising from claims against the assured by reason of loss as stated, and all the costs imposed upon the assured, together with interest, in any legal proceeding defended by the company in accordance with the terms and conditions of this policy, and all interest which may accrue after the entry of the judg-

ment up to the date of payment upon that part of said judg-ment which does not exceed the limit of liability of the company as stated in paragraph A of the conditions; but the assured shall not assume voluntarily any liability; nor shall said assured, without the consent in writing of the company, incur any expense or settle any claim, except at his own expense; whenever the company may require it, the assured will assist in obtaining information and proof and the appear-ance of witnesses.—List of stipulations.—Clause I.—Liability. —Loss or expense, or both, arising from claims against the assured due to bodily injury or death, or both, accidentally caused, or which may be alleged to have been caused, to any person (except employees of the assured) by reason of the possession or use of the automobile described; provided, that the liability of the company for loss in an accident which results in bodily injury or death, or both, to a single person, shall be limited to the amount set forth in Clause II, para-graph A, and, subject to the same limitation for each person, the total liability for loss occasioned by any accident shall be limited to the amount set forth in Clauses I–II, paragraph A.—Clause I (A)—The liability of the company for the fol-lowing risks, as hereinbefore defined and subject to all of the conditions contained in or indorsed upon this policy, is limited to amounts not exceeding the insurance here set forth and to the period or term of the policy, as follows:—II.—Liability and consideration.—Liability for personal injury: Limit for each person, $5,000; for injury to property of others, $3,000; Total for each accident: $13,000. And this policy is issued by the company in consideration of the payment made to it by the assured of the sum of $300.

This policy was originally issued by the defendant insur-ance company, The Aetna Casualty & Surety Co., to Agustín Aponte, being thereafter, on June 29, 1925, transferred by said company to the public carrier Juan Basabe.

The plaintiff, Alfredo Rondón, was not an employee of the public carrier Juan Basabe on the date of the accident

above mentioned. The attorneys of the defendant insurance company, Messrs. Hartzell, Kelly & Hartzell, defended the assured Juan Basabe in all the proceedings in court up to the moment of trial.

The policy was in force upon the date of the accident which gave rise to the judgment of the court already mentioned, had been approved by the Public Service Commission of Puerto Rico, pursuant to an opinion of the Attorney General of February 24, 1925, and was filed in the office of the secretary of said commission, in accordance with the provisions of the Regulations of June 30, 1925, as a document indispensable for the obtention of a certificate of necessity and convenience by every public carrier.

No part of the amount claimed under the judgment rendered by the District Court of San Juan, on December 9, 1926, against the public carrier Juan Basabe, has been paid, either by the public carrier Juan Basabe, or by any other person or entity on his behalf.

The insurance contract was entered into in consideration of the payment of the premium of $300, made by the assured to the insurance company.

The defendant, after having been summoned, appeared and set up the following grounds of demurrer:

"1. That the complaint does not state facts sufficient to constitute a cause of action.

"2. That the allegations of fourth and fifth paragraphs of the complaint are ambiguous and uncertain for the reason that alternative allegations are improperly made therein as to the nature of a certain contract of insurance, it being characterized first as a policy of insurance and then as a bond, and it being the duty of the plaintiff, who claims to have knowledge of the contents of said contract, to allege its character in a more precise and specific form."

After hearing both parties, the court sustained the demurrer, and granted ten days to the plaintiff for amendment.

The plaintiff presented his amended complaint, setting up the same facts already alleged, and further that in the suit

which he brought against Basabe a writ of execution was issued under the judgment of November 24, 1930, and was returned with a statement by the marshal that Basabe had no property; and that the policy contained the following:

"*Insolvency Clause.*—(2). It is understood and agreed that the insolvency or bankruptcy of the assured or other persons entitled to benefit under this policy will not release the company from the payment of damages for injury or loss occurred during the time this policy is in force. In case a writ of execution of judgment against the assured or other defendant should be returned unsatisfied in an action brought for injuries by the injured person (or if death should result from the accident, by the person having the right of action), as a result of such insolvency or bankruptcy, an action may be brought by the injured person, or his successors, against the company for the amount of the judgment in such case, provided that it shall not exceed the limit of the policy."

He also alleged that the opinion of the Attorney General upon the policy was as follows:

"I have examined bonds Nos. 6770,—3512551,—3512477, and 3512794, issued by the Porto Rican American Ins. Co. and the Aetna Casualty & Surety Co., to guarantee Messrs. Andrés Medina, Bou, Rivera & Co., and Agustín Aponte in the fulfillment of their responsibility as public carriers under the provisions of Rule III of the Regulations for motor vehicles, approved by the Public Service Commission on June 3, 1924, and find that said bonds are in accord with the law as to form and execution."

There was attached to the complaint a certified copy of the policy in question.

The defendant filed a new demurrer to the complaint, and the court again sustained his demurrer, with leave to amend. The following paragraphs appear in the opinion of the court:

"The defendant demurred to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. It bases this insufficiency upon the fact that no legal connection is established between the plaintiff and defendant by the issuance of the policy and the entry of judgment, and that the nonpayment of the judgment on account of the insolvency of the insured is a fact

which occurred after the commencement of this suit, and that the allegation of such facts changes the cause of action.

"Really, a fact is alleged which occurred after the commencement of this suit but before the amendment of the complaint, and the cause of action is not changed.

"But can this action be brought without compliance with the conditions precedent? Undoubtedly not. The insurer had a real interest in intervening and used the right of intervention in the proceeding in which the liability of the insured was fixed and in which the amount of the damages were assessed. The defense of the insured by the company is one of the terms and conditions of the policy. It is not alleged that it was notified of the litigation, nor that it was made a party thereto. The fact that the attorneys for the insurance company defended the insured means nothing if their appearance and presence was not authorized by the insurer. The least that the non-observance of this condition can oblige the plaintiff to do, is to repeat the evidence, because the defendant has a right to defend the insured, and to have its day in court.

"The plaintiff contends that the contract is a bond, while the defendant maintains that it is an insurance contract. The document forms part of the complaint. What it is called is of no importance; its effect is what counts.

"The court is of the opinion that under the terms of the contract, it is one of insurance: a policy.

"Among the general conditions of the policy, to which the complaint refers, under the caption of 'Limitation of Liability—Clause A,' it is provided that the company will pay the claims arising from any legal proceeding defended by the company, and it is also provided that 'whenever the company may require, the assured will assist in obtaining information and proof and the appearance of witnesses,' as well as undertake settlements and the handling of appeals; and under the caption 'Claims and Suits against the assured—Clause C,' it is provided that the insured will cooperate with the company at all times to facilitate the termination of claims and suits. It is nowhere alleged that the insured complied with the conditions of the policy.

"On the other hand, whether we consider that the applicable Regulations of the Public Service Commission are those of June 3, 1924, and not those of June 30, 1925, which the plaintiff states were the ones considered as applicable by the Supreme Court in *Rondón* v. *Basabe,* 41 P.R.R. 101, since what was posted was an insurance policy as appears without question from the document itself, although

the Attorney General called it a 'bond' in his opinion, the plaintiff is subject to the clauses and conditions agreed upon in filing suit thereon.''

A second amended complaint was filed. It contains the facts theretofore alleged, and it is expressly stated therein that at the time Basabe commenced his business, Rule III of the Regulations of the Public Service Commission of June 3, 1924, was in force, and that in compliance with that rule and subject thereto, Basabe filed in the commission his bond or policy which the commission accepted pursuant to the favorable opinion of the Attorney General.

The defendant asked the court to strike the last amended complaint as being improper, and to dismiss the action.

The court decided the question thus raised as follows:

"In the case of *Succession Vélez et al.* v. *Vélez et al.*, 23 P.R.R. 572, it was held that a motion to strike an amended complaint and to enter judgment dismissing the action on the ground that the amended complaint was an exact reproduction of the original complaint, which had been dismissed, and failed to correct the errors or mistakes therein, is equivalent to a demurrer; and that when a court grants leave to a party to file an amended pleading, the new pleading should be an exact reproduction of the former or contain only such slight changes that it does not actually correct the errors or mistakes of the former.

"Indeed, the second amended complaint in this case, which we are considering, although some words are omitted and others added, does not alter at all the scope of the first amended complaint. It is practically a reproduction of the former pleading, without such substantial change as would constitute compliance with the order of March 21, 1931.

"The motion of the defendant is equivalent to a demurrer to the second amended complaint, and since this, like the former complaint, does not state facts sufficient to constitute a cause of action, the said motion must be sustained.

"The plaintiff in his brief states that 'it is true that in the suit brought by the plaintiff against the insured Juan Basabe, the Supreme Court decided a point in which it stated a doctrine apparently adverse to our contention, but upon that point nothing was decided which had any connection with the question which we are now ar-

guing.' The theory of the plaintiff now is that by the clauses or conditions of the policy, particularly the insolvency clause and the Rule of the Public Service Commission of June 3, 1924, he is authorized to proceed directly against the company, on the sole basis of the judgment rendered against the insured. But it appears from the policy that the company agree 'to insure the assured (Basabe) and his legal representatives, subject to the terms and conditions in or indorsed upon this policy,' against the risks set forth in the list of stipulations attached to the policy, it being provided in the list of stipulations that the company would be liable for 'loss or expenses, or both, arising from claims against the assured.' The company was not obligated to pay for the assured, but to pay to the assured the loss or expenses which he might have by reason of claims filed against him, and, of course, subject to a compliance by the assured with the terms and conditions of the policy.

"The plaintiff in his amended complaint has failed to allege, as required by the order of the court, that the assured has complied with all the clauses and conditions of the policy, in order that he may have a right to claim thereon, and accordingly does not establish facts sufficient to constitute a cause of action. It is a rule that when the insured fails to comply with the conditions of the policy, the responsibility of the insurance company ceases, and no right of action upon the part of a prejudiced third person subsists. *Schoenfeld v. New Jersey Fidelite & Plate Glass Ins., Co.*, 203 App. Div. 796, 192 N. Y. Supp. 606; *Roth v. National Automobile Mut. Casualty Co.*, 202 App. Div. 667, 195 N. Y. Supp. 865, *Schroeder v. Columbia Casualty Co.*, 126 Misc. 205, 213 N. Y. Supp. 649."

Judgment having been entered pursuant to the foregoing conclusions and reasons, the plaintiff appealed therefrom. Both parties have filed briefs showing a careful study of all of the questions involved in the case.

The first question to be considered and decided in this case is whether the same is controlled by the decision in *Rondón v. Basabe,* 41 P.R.R. 101, where this court said:

"It seems that the plaintiff relied on the Regulations of the Public Service Commission of June 30, 1925, which makes it obligatory for the owners of public service automobiles, such as the automobile of the defendant which caused the injury complained of herein, to take out a liability policy, 'which shall cover any compensation awarded by the proper court to any person injured, damaged or prejudiced

in his person or property, or to his heirs in case of his death, by reason of any accident due to the careless, negligent or defective operation of the motor vehicle by the public carrier, whether said vehicle is operated by the grantee of the franchise directly or through any of his agents, employees or subordinates.' However, such regulation does not apply in the present case, because according to its own provisions it went into effect on a date subsequent to the occurrence of the accident. But even if applicable, it would not be sufficient of itself to justify the order of attachment, without proof that such a policy had in fact been issued by the said company; that its clauses entitled the plaintiff to proceed directly against the insurer upon recovery of a judgment against the insured, and that the said insurer has had its day in court after having been duly summoned—circumstances which not only were not shown but were not even properly alleged.''

Both cases are closely related, but since here an independent suit has been brought in which the defendant is being given his day in court, in which we have the policy before us, and in which a different regulation of the Public Service Commission is invoked, we must consider it and decide it upon its own merits.

The appellant maintains that when the policy was issued and when the accident occurred, there was in force Rule III of the Regulations of the Public Service Commission, approved June 3, 1924, which reads as follows:

"Rule III.—*Bond to cover Accidents and Cancellation of the Certificate.*—Before authorizing the issuance of a certificate of necessity and convenience, the Commission shall request from the petitioner a mortgage bond or a surety bond, issued by one of the surety companies legally authorized to do business in Porto Rico, for a sum which the Commission shall fix, which in no case shall be less than three thousand (3,000) dollars for each vehicle, to answer for the compensation awarded by a competent court to any person injured in person or property, or to his heirs in case of death, on account of any accident due to the careless, negligent or defective operation of the motor vehicles used as a public carrier, whether it be operated by the petitioner personally or by any of his agents, employees or subordinates. Said bond, after being examined by the Attorney General of Porto Rico as to its form and execution, shall be ap-

proved by the Public Service Commission, and shall be filed at the office of the Secretary of the Commission, before the vehicle to which said bond refers has been put in service.

"(*a*) Upon the occurrence of an accident, the Commission may, upon investigation, revoke the certificate of necessity and convenience issued, but such revocation shall not affect the bond, which shall remain in full force and effect until the courts render judgment in regard to the accident."

Further, that since the policy contains a clause which provides that: "If any of the terms or conditions of this policy should be in conflict with the law of Puerto Rico, such terms and conditions shall have no effect in so far as they are in conflict with said law. Any specific statutory provision in force in Puerto Rico shall replace any condition of this policy inconsistent with such statute," Rule III of the Commission not only forms part of the policy but also prevails in case of conflict, and converts the policy into one of liability equivalent to that of a bond.

The appellee on the contrary maintains that the policy issued by it was never converted into a bond, 1, because the Public Service Commission had no power to adopt a rule such as that relied upon; 2, because said rule was repealed by that of June 30, 1925, of the commission; 3, because as the aforesaid rule provides for the submission of the form and execution of the contract to the Attorney General, the policy was approved in the form in which it was issued by the defendant, and 4, because the said rule does not give injured persons the right to make claim directly upon the insurance company.

The first question which the appellee raises was decided against it in the case of *Santiago v. Public Service Commission et al.*, 37 P.R.R. 467, as the appellee itself admits in its brief. The arguments advanced to sustain the contention that this court went too far do not convince us, and consequently, the principles there established are still in force, thus:

"The problem involves two propositions. It is alleged by the plaintiff that under the terms of section 38 of the Organic Act of 1917 as worded before the amendment the Commission had power

only to regulate the service of common carriers by railroad, and it is further contended that although it had power to regulate all kinds of carriers, that power would never extend to the granting of a monopoly such as that conceded in this franchise.

"With relation to the first proposition, it is true that section 38 of the Organic Act expressly authorizes the Legislative Assembly to enact laws relating to the regulation of the rates, tariffs and service of all public carriers by rail in Porto Rico and empowers the Commission to enforce such laws under appropriate regulation, but in our judgment that authority, appearing in the last paragraph of the section, was granted as a consequence of the provision of the preceding paragraph in relation to the inapplicability to Porto Rico of the Interstate Commerce Act and its amendments and the Safety Appliance Acts to which the preceding paragraph refers.

"The first part of section 38 is broad. It prescribes that "all grants of franchises, rights, privileges, and concessions of a public or quasi public nature shall be made by a public service commission . . .' And the Legislature of Porto Rico, which in this particular has powers similar to those of any state of the Union, with the only limitation that its laws may be annulled by Congress, in the same year of 1917 passed Act No. 70, to which we have heretofore referred, subjecting all companies engaged as common carriers in general to the jurisdiction of the Commission. Perhaps it may be well to cite section 52 of said Act No. 70 which begins as follows:

" 'The commission shall have power to grant franchises, rights, privileges or concessions for public or quasi-public purposes, including the right to use, or cross roads, highways and public streams . . .'

"In the case of *Kane* v. *State of New Jersey*, 242 U. S. 160, the Supreme Court of the United States said:

" 'The power of the State, in the absence of national legislation upon the subject, to regulate the use of its highways by motor vehicles moving in interstate commerce, applies as well to such as are moving through the State as to such as are moving into it only.'

"Then, the special authorization of Congress was not necessary. The power resided in the Legislature to which Congress, in section 25 of the Organic Act, granted all local legislative powers in Porto Rico, and the Legislature could delegate its powers to the Commission.

" 'Power to make laws is vested in the legislature, under the constitutions of all of the states, and it has been thought to be very doubtful whether the legislative department can delegate to any other body or authority the power to grant franchises, inasmuch as the

exercise of that power involves a high trust created and conferred for the benefit of those who granted it, and the trust is confided to the legislature. It seems to be settled, however, that state legislatures may not only exercise their sovereignty directly, but may delegate such portions of it to inferior legislative bodies as, in their judgment, are desirable for local purposes.' 12 R.C.L. 187.

"The fact that in amending said section 38 the Butler Act substituted the words 'public carriers by rail' by the words 'all public carriers,' can have no greater extent than to remove any doubt that might be entertained. We do not believe that to this case is applicable the maxim *Expressio unius est exclusio alterius*, for we have said that the paragraph referred to is logically applicable as a complement of the preceding one. At any rate, it may be held that the amendment was already in force when the Commission acted upon the matter, although constituted as it was.

"The second proposition covers a broader field of investigation."

The second question raised was discussed at length in the supplemental briefs filed by the attorneys for both parties on November 28, 1933, and January 10, 1934. It is not an easy question to decide. We shall try to bring out the truth as we may understand it.

On June 3, 1924, the Public Service Commission approved the *Regulations governing the operation of motor vehicles operating as common carriers between fixed points and along determined routes.*

There is no question that those regulations were in force when the policy involved in this case was issued, passed upon by the Attorney General, and filed with the commission. Nor is there any question as to the fact that the policy was in force at the time of the occurrence of the accident which is the basis of this suit. The appellee maintains, however, that when the accident occurred—February 13, 1926—the 1924 Regulations had been repealed by those of June 30, 1925, of the same Commission, entitled *regulations governing the operation of motor vehicles operating as common carriers.*

A comparison of the two regulations shows that the first, or that of 1924, refers exclusively to motor vehicles operated as common carriers between fixed points and along deter-

mined routes, that is, to those called busses (*guaguas*), and the second, or that of 1925, comprises all public service motor vehicles operating as common carriers, that is, not only those called busses but any other kind of vehicle provided it is a motor vehicle.

Rule III of the 1924 Regulations had the clear purpose of guaranteeing the public in general, requiring as a prerequisite of the carrier that he post a mortgage or surety company bond to answer for any damages which might be awarded by a court to any person who might suffer by reason of the careless, negligent, or faulty use of the vehicle.

Rule III of the 1925 Regulations is similar to that of the 1924 Regulations, but contains a proviso as follows:

". . . the filing of a bond or liability policy upon the part of the public service automobiles already referred to in this regulation shall not be required until July 1, 1926."

It is on that proviso and on the repealing clause contained in the 1925 Regulations that the appellee bases his contention that Rule III of the Regulations was not in force upon the date of the accident, and that therefore upon that date there was no rule in force which required the filing of a bond upon the part of the carrier to guarantee those persons which the commission had in mind in 1924.

Let us examine the terms of the repealing clause. They are contained in Rule XVII of the 1925 Regulations, and provide as follows (italics ours):

"The present regulations repeal any prior regulations in those parts *in which they may be in conflict,* as well as any other rule or regulation adopted prior to the approval hereof, and they must be published in two newspapers of general circulation in Puerto Rico; *Provided,* That the annulment by any court of any of the rules of these Regulations shall not affect the remaining rules."

Is the requirement of Rule III of the 1924 Regulations, with respect to the filing of bonds by public carriers operating between fixed points and along determined routes such as

Basabe, in conflict with the proviso of Rule III of the 1925 Regulations?

In our opinion, taking into consideration all the surrounding circumstances, the question must be answered in the negative.

In compliance with its duties and following the policy adopted by the states on the continent, the commission commenced by making rules which tended to safeguard the public, and applying them to those carriers which were considered to be the greatest risk. Becoming later convinced that the risk was involved in all, the commission demanded the guarantee from all. Rule III of the 1925 Regulations contains the same matter covered by Rule III of the 1924 Regulations, except that it embraces a larger field. It is perfectly understandable that the new class of vehicles included should be given a period of time within which to comply with the requirement, but it is not conceivable that the commission should leave the public without protection as to that other class of vehicles—the busses—which had already been regulated and which had complied with the requirements of the regulation, as in the present case.

The third and fourth questions will be considered and decided jointly.

We have before us the opinion of the Attorney General rendered in compliance with the rule. That officer had the opportunity to clarify the whole situation so that the real purpose of the commission might be fulfilled. He did not do so. He either failed to apprehend fully the purpose of the commission, or examined the document in a very superficial way; and he consequently approved it in the form in which it was drafted, which can not be ignored in determining the obligations of the parties to the contract.

We do think that the contract ought to be construed as though the rule were in force, and that consequently it must be held that the company contracted the direct obligation to pay, up to the limit fixed in the policy, any damages which

might be awarded by the proper court to any injured person; but we also think that that obligation is conditioned upon the stipulations contained in the policy. The company was liable to the public, but in the form which appears in the policy, as reviewed by the Attorney General and accepted by the commission. There exists a legal connection (*nexo*) between the plaintiff and the defendant, but this connection is governed by the terms of the policy.

We have studied the decision relied upon by both parties, and which they not only cite but also fully discuss with respect to the facts upon which they rest; and in our judgment, applying the rules of those decisions so far as possible to the facts in this case, they sustain the conclusion reached by us, which disposes of the fourth question raised by the appellee in the negative, and of the third question in the affirmative.

The conclusion which we have reached as to the existence of a legal connection between the parties in this case, is also supported by the insolvency clause of the policy itself, whereby a suit by the injured person against the company was authorized, after the rendition of a judgment against the assured and after a writ of execution on the judgment should have been returned unsatisfied on account of the insolvency of the assured. Nevertheless, such suit depends upon the conditions of the contract.

The cases upon this point are numerous. Of all the decisions which we have examined, we shall confine ourselves to the citation of one, which clearly and vigorously and with due consideration to all the interests involved, establishes the basis upon which questions like the one here raised should be decided. We refer to the case of *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271, in which, speaking for the court, Mr. Justice Cardozo expressed himself as follows:

"The argument is made that the effect of section 109 of the Insurance Law is to create an original obligation in favor of the injured claimant for the amount of any judgment recovered against the holder of the policy without reference to any breach of condition as

between insurer and assured. We see no basis for such a ruling (cf. *Schoenfeld* v. *N. J. Fid. & Plate Glass Ins. Co.*, 203 App. Div. 796, 800; *Roth* v. *Nat. Auto Mut. Cas. Co.*, 202 App. Div. 667, 669; *Lorando* v. *Gethro*, 228 Mass. 181, 185, 186). By express provision of the statute, the action is to be 'maintained by the injured person . . . against such corporation under the terms of the policy.' If the terms could be disregarded, insurers would be helpless to defend themselves against chicanery or covin. They might then be held though there had been neither notice of the claim nor opportunity reasonably prompt to investigate the merits (cf. *Lorando* v. *Gethro*, 228 Mass. 181, 185). The plaintiff argues that a bankrupt holder of a policy colluding with an insurer could refuse to co-operate, and thus enable the insurer to cheat the statutory remedy. With equal force, the defendant can argue that a bankrupt assured could collude with a claimant to fasten upon the insurer a fictitious liability. The statute was prompted by a definite mischief (cf. *Lunt* v. *Aetna Ins. Co.*, 253 Mass. 610; *Roth* v. *Nat. Auto Mut. Cas. Co., supra*). Before its enactment, the insolvency of the assured was equivalent in effect to a release of the surety. The policy was one of indemnity against loss suffered by the principal, and loss to him there was none if he was unable to pay. The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied. The cause of action is no less but also it is no greater. Assured and claimant must abide by the conditions of the contract.''

The situation in this case is not precisely the same as that in the New York case, because here we do not have the statute there interpreted, but as we have already said, under all the circumstances of the case, the most that can be drawn from the policy is the authorization of a direct action by the injured person against the company, founded upon a judgment obtained by the latter against the assured, but subject to the conditions appearing in the document itself, which the Attorney General thought sufficient and which the commission accepted.

The subject was then somewhat new, but it has since been perfected by laws and rules that leave no room for doubt.

In accordance with the recommendation of the Attorney General of June 24, 1927, the policies which the Commission approves ought to contain a clause reading as follows:

"It is understood and agreed that under this policy any person (except the chauffeur and collector of the vehicle) who owing to or by reason of the operation or handling of the vehicle or vehicles which are described in this policy, may suffer, any damage or injury to his person or property, may, at his option, bring a suit in the proper court against the owner of the vehicle or against the insurance company or against both, for the purpose of securing indemnity for any damage or injury suffered; it being understood that in case of the death of the person injured or damaged, his heirs may bring such suit.

"It is moreover understood and agreed that no failure, blame or negligence upon the part of, or attributable to the owner, chauffeur or collector of the vehicle or vehicles comprised within this policy, for not having complied with any requisite of this policy, or in any other way, shall be a defense against this policy in so far as the same refers to the person injured or damaged."

And section 175 of Act No. 66 of 1921 (Session Laws, page 648), known as the Insurance Law of Puerto Rico, was amended by the Legislature in 1929, so that it reads as follows:

"Section 175.—Any clause in an insurance contract depriving the insured of his right to claim in the courts of justice, at any time after the occurrence of the accident against which the insurance was made, the amount of any loss suffered and which has been the object of such insurance shall be illegal. When the person causing the damage is insured against the accident which caused the loss or damage, and in the case where the insurance policy was issued in favor of a third person, the action to claim such indemnity as may be proper may be presented jointly against the insured person and the insuring company. The court shall determine not only the liability of the company, but also the amount of the loss."

To interpret the contract in this case as though the policy by reason of Rule III of the 1924 Regulations imposed liability directly in favor of the injured person, without the necessity of first establishing that the assured complied with his obliga-

tions to the insurer, would be, we repeat, clearly unjust to the insurer under all the circumstances.

We believe, however, that the doors ought not to be closed completely to the plaintiff's claim, since perhaps he may be able to make a final amendment to his complaint showing expressly that the judgment in his favor was obtained in a suit in which the assured complied with all of his obligations to the insurer, and in which, if the latter did not defend, it was because it did not wish to do so, or because it had no meritorious defense.

The judgment appealed from is therefore modified to grant fifteen days to the plaintiff within which to amend his complaint, and as so modified, the judgment is affirmed.

Mr. Justice Wolf is of the opinion that the judgment ought to be affirmed without modification.