**ERMAKORA, Plaintiff-Appellee, v. DAILLAKIS, Defendant, DEARBORN NATIONAL CASUALTY CO., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22199.   Decided October 22, 1951.

Malvern E. Schultz, Cleveland, for plaintiff-appellee.
J. R. Kistner, Cleveland, for defendant-appellant.

(DOYLE, J, of the 9th District, sitting by designation in place of HURD, J.)

### OPINION

By THOMPSON, J:

This case has been appealed to this Court on a question of law from a decision of the Common Pleas Court.

Plaintiff originally commenced an action against one Dailliakis for injuries allegedly sustained when hit by an automobile operated by Daillakis. Plaintiff recovered a judgment against Daillakis in the sum of $2,000.00 in the Common Pleas Court. This judgment not having been satisfied within thirty days after the date when it was rendered, and Daillakis being covered by liability insurance, plaintiff, proceeding under §9510-3 and §9510-4 GC, thereupon filed a supplemental petition in the Common Pleas Court in the same action in which said judgment was rendered, making the Insurance Company a new party defendant. It may be observed that §§9510-3 and 9510-4 GC provide in part as follows:

"**Sec. 9510-3 GC. Liability of Insurance Company for Bodily Injury or Death.**

"In respect to every contract of insurance made between an insurance company and any person, firm or corporation by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death by accident of any person for which loss or damage such person, firm or corporation is responsible, whenever a loss or damage occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage or death occasioned by such casualty * * *."

"**Sec. 9510-4 GC: Insurance Money Applied to Judgment, When; Insurer as Party Defendant.**

"Upon the recovery of a final judgment against any firm, person or corporation by any person, including administrators and executors, for loss or damage on account of bodily injury or death, * * * if the defendant in such action was insured against loss or damage at the time when the rights of action arose, the judgment creditor or his successor in interest shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor or his successor in interest, to reach and apply the insurance money to the satisfaction of the judgment, may file in the action in which said judgment was rendered, a supplemental petition wherein the insurer is made new party defendant in said action, and whereon service of summons upon the insurer shall be made and returned as in the commencement of an action at law. Thereafter, the action shall proceed as to the insurer as in an original action at law."

For convenience, the plaintiff in the trial court, appellee in this court, will be referred to as Plaintiff; while the Insurance Company, defendant in the supplemental petition, appellant in this court, will be referred to as the Insurance Company. Trial was had in the Common Pleas Court and judgment was rendered in favor of plaintiff and against the insurance company.

Counsel agree that the sole question before this Court is whether there has been such breach of the condition of the insurance policy, requiring cooperation of the insured, as to release the Company. Briefs of counsel cite the language of the Insurance Policy of Daillakis as controlling the question before us. The language is as follows:

"12. **Assistance and Cooperation of the Insured**: Coverages A, B, C, D, E, F, G, H, I, and J. The insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, the insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

The insurance policy was introduced in evidence in the trial court and is attached to the Bill of Exceptions as Plaintiff's Exhibit A. We direct attention to Coverage A, whereby the Company agrees

"to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons other than the insured, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Before discussing the language of the insurance policy, facts recited in the pleadings (the supplemental petition of plaintiff in the trial court, the separate amended answer of the insurance company and the reply of plaintiff) and the evidence in the trial court become important.

Plaintiff's supplemental petition under §9510-4 GC, recited his personal injuries and his recovery of judgment for $2,-000.00, and further alleged that, prior to and on the date of the accident, there was in full force and effect an automobile insurance policy covering the operation of the automobile owned and operated by Daillakis, issued by defendant

insurance company. Plaintiff further recited that said judgment against Daillakis had become final and unsatisfied and that, more than thirty days having elapsed since the rendition of the judgment, plaintiff made demands on the insurance company to pay the judgment and that the demand was refused. Plaintiff further alleged that he was entitled to have the insurance money under the policy applied to the satisfaction of his judgment against Daillakis.

The insurance company filed an answer and subsequently a separate amended answer, admitting that on September 3, 1948, there was in full force and effect a policy of liability insurance of the company issued to Daillakis with respect to any liability imposed by law upon the insured for damages because of bodily injury arising out of the ownership and use of the automobile of Daillakis. Further answering, the insurance company denied all of the allegations of the supplemental petition.

Although other defenses in addition to a general denial were pleaded, the only one asserted in this Court is violation by the assured of the condition of the insurance policy with respect to cooperation.

The Bill of Exceptions sets forth the evidence before the trial court on this subject. The only witness called at the trial on the supplemental petition was plaintiff's attorney, Mr. Schultz.

The testimony discloses that at the time of the accident, the assured in a policy report, gave his address as "6304 Lexington Avenue, Cleveland, Ohio." Six days later, on Sept. 9, 1948, the plaintiff's attorney addressed a letter to the assured at 6304 Lexington Avenue, concerning the injuries and claims of his client. No answer having been received, Mr. Schultz, the attorney for plaintiff, checked the City Directory and noted that the individual living in the house at the address in question was shown to be one Kariotakis. He therefore wrote to the said Kariotakis, under date of Oct. 7, 1948, the letter sent being identical with the letter previously addressed to Daillakis except as to salutation. Plaintiff's attorney testified that, a few days later, he received a telephone call from a man who said he was Daillakis and who stated over the telephone, "You sent the letter to the wrong place * * *. I live at 9014 Lexington Avenue but not at 6304." Plaintiff's attorney said that the main thing he wanted was to discuss the accident and the man talking over the telephone agreed to come to his office a few days later. No one ever came to see Mr. Schultz, so the latter, on Jan. 21, 1949, filed a petition issuing summons to Daillakis at 9014 Lexington Avenue, this

being the address mentioned in the telephone conversation. Mr. Schultz further testified that after waiting a reasonable length of time for service by the Sheriff, he checked with the Sheriff's office and learned that no service had been obtained upon Daillakis and the office reported there was no such address as 9014 Lexington Avenue. Mr. Schultz then testified that he made further investigation to locate the address of Daillakis, inquiring through friends in the Greek colony in Cleveland. He learned that Daillakis had been keeping company with a woman, had planned to marry her, and that then, shortly prior to the accident, the two had quarreled. Testifying as to his investigation, Mr. Schultz stated:

"The theory was that he had left town, that this Daillakis had left town as a result of this quarrel, or whether the automobile accident had anything to do with his leaving town or not, I am not so sure. I am not even sure that this was Daillakis that called me up. It may have been some other Greek covering up for him."

Plaintiff's attorney, further testifying in the hearing on the supplemental petition, said that shortly after the accident, having learned that Daillakis had insurance, he had telephoned Mr. Andrew Strek, agent admittedly representing the defendant insurance company with offices in the Williamson Building. The latter asked Mr. Schultz to telephone Mr. R. S. Lewis, declaring: "He is the attorney that represents these matters for us." Mr. Schultz testified that he then telephoned Mr. Lewis, and, under date of Oct. 12, 1948, confirmed by letter the fact that he represented plaintiff. On Oct. 20, 1948, Mr. Schultz received a letter signed by Lewis on the letterhead of The Automobile Inspection & Adjustment Company, 502 Newman-Stern Bldg. 1740 East 12th St. Cleveland, Ohio, in which was enclosed an attending physician's report blank. Mr. Schultz was asked to have his client's attending physician complete and return the form. Under date of Oct. 25, 1948, plaintiff's attorney talked by telephone with the office of the Automobile Inspection & Adjustment Company and upon being told that he must submit the completed medical report he thereupon, on Oct. 27, 1948, sent a letter to the hospital to obtain further information. On Jan. 10, 1949, Mr. Schultz had another talk with the Adjustment office. On Feb. 17, 1949, Mr. Schultz talked with the Adjustment office concerning a settlement of the case, having previously forwarded to that office a copy of the petition when he filed suit (Jan. 21, 1949).

On March 10, 1949, Mr. Schultz called at the Adjustment Company's office and talked with Mr. Hyland and delivered

a copy of the medical report, narrating his client's injuries, and settlement was again discussed. On July 13, 1949, Mr. Schultz had a telephone talk with the representative of the insurance company and a small offer of settlement was made at or about this time. On Aug. 9, 1949, Mr. Schultz testified that he issued an alias summons and arranged for service on Daillakis through the Secretary of State of Ohio. He also informed Mr. Hyland of the Adjustment Company's office of what he was doing. Under date of Sept. 1, 1949, plaintiff's attorney received a copy of the sheriff's return from Franklin County, showing service on Daillakis through the Secretary of State.

On Sept. 30, 1949, the case against Daillakis came on for trial and it was postponed to October 5th for medical testimony. On October 10, 1949, the trial court hearing the testimony rendered judgment for $2,000.00 against Daillakis. Mr. Schultz testified that he immediately called the Adjustment Company's office, informing Mr. Hyland that he had obtained a judgment against Daillakis. Plaintiff's attorney thereupon, at the expiration of thirty days, filed the supplemental petition against the insurance company which is here involved. Trial on the supplemental petition took place on March 15, 1951. Sole witness for plaintiff was his attorney, who narrated to the court his efforts to reach Daillakis and his conferences with the insurance company hereinbefore noted. On cross-examination, by the insurance company's attorney, Mr. Schultz stated that in his investigation he found no evidence of any collusion between plaintiff and defendant, Daillakis, and no evidence of collusion between Daillakis and the insurance company. Upon termination of the cross-examination of Mr. Schultz by the attorney for the insurance company, plaintiff rested. The insurance company having thereupon asked for judgment in its favor, the Court overruled the motion and defendant rested without calling any witnesses in its own behalf.

The detailed statement of facts here set forth and summarized from the Bill of Exceptions, has been made necessary because of the issue raised by the parties with respect to the cooperation clause of the insurance policy and its effect on the ultimate question of the liability of the insurance company.

At the outset it should be stated that the construction of §§9510-3 and 9510-4 GC, is no longer in doubt, in view of the long line of Ohio cases in which these actions have been discussed by our Ohio Supreme Court. The leading case declaring the meaning and validity of these sections is **Stacey**

v. **Fidelity & Casualty Co. of New York, 114 Oh St 633,** and in numerous subsequent decisions the Supreme Court has further defined various aspects of these statutes. (See: **State Automobile Mutual Ins. Assn. v. Friedman, 122 Oh St 334; State Automobile Mutual Ins Assoc. v. Lind, 122 Oh St 500; Hartford Accident & Indem. Co. v. Randall, 125 Oh St 581; Luntz v. Stern, 135 Oh St 225; Conold v. Stern, 138 Oh St 352; Miller v. Jones, 140 Oh St 408; In re Estate of Basmajian, 142 Oh St 483; Hendershot v. Ferkel, 144 Oh St 112; Hendershot v. Ferkel, 147 Oh St 111; Conner v. Miller, 154 Oh St 313.)** These sections are not unique to Ohio. The Massachusetts statute from which the Ohio statute was taken practically verbatim was analyzed and upheld in Lorando v. Gethro, 228 Mass. 181, and similar statutes are found in a number of other states. On this point, see excellent note in 22 O. O. 77, at page 80 by Robert C. Grisanti.

In **Luntz v. Stern, 135 Oh St 225,** the Ohio Supreme Court held that by the provisions of §9510-4 GC, a judgment creditor is entitled to a direct action against the insurance company after obtaining a judgment against the assured and after the lapse of thirty days after judgment is rendered, provided that any valid conditions or requirements in the contract of insurance which would be binding upon the assured are likewise binding upon such judgment creditor. In **Miller v. Jones, 140 Oh St 408,** it was held that the failure of an assured to comply with the provisions of a policy of liability insurance requiring the cooperation of the assured in the preparation and trial of any claim or suit against him and forbidding him to make settlement thereof except at his own cost without the written authorization of the insurer, constituted a good and valid defense in a supplemenal proceeding to recover from the insurer pursuant to the provisions of §9510-4 GC. To similar effect, note **Conold v. Stern, 138 Oh St 352,** wherein Judge Hart pointed out (page 358) that while §9510-4 GC, provides,

"that an injured person may, by supplemental petition, proceed against the insurance company after judgment is obtained against the insured who was responsible for the injury, this must be interpreted to mean that such right is subject to the limitations and conditions of the insurance contract entered into between the insurance company and the insurer, **including conditions subsequent to be performed by the insured** after an injury covered by the policy occurs, which conditions become conditions precedent to a right of action on the policy."

Attention is further directed to the analysis of such a

situation by Judge Hart at page 359 of the opinion, as fol·lows:

"A clause in an insurance policy requiring the insured's cooperation, aid and assistance in a defense of an action against him is a material condition of the policy, the violation of which by the insured forfeits his rights to claim indemnity under the policy. It is a condition precedent, failure to perform which, in the absence of waiver or estoppel, constitutes a defense to liability on the policy. Stacey v. Fidelity & Casualty Co of New York, supra; Royal Indemnity Co. v. Morris, 37 F. (2d) 90, certiorari denied; Morris v. Royal Indemnity Co. 281 U. S. 748, 74 L. Ed. 1160, 50 S. Ct. 353; Bachhuber v. Boosalis, 200 Wis. 574, 229 N. W. 117; Metropolitan Casualty Ins. Co. v. Blue, 219 Ala. 37, 121 So. 25; Guerin v. Indem. Ins Co. of N. America, 107 Conn. 649, 142 A. 268; Coleman v. New Amsterdam Casualty Co. 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443.

And the insured's failure to comply with the cooperation clause in his indemnity insurance policy constitutes a good defense to his insurer as against a person injured by the fault of the insured, seeking, under and by virtue of the statutes in question, to recover against the insurer for his injury."

It seems that in the light of past decisions interpreting §§9510-3 and 9510-4 GC, the only question for decision by this Court is whether the defense of lack of cooperation by the assured set out in the insurance company's answer is an affirmative defense to be established by defendant or whether, under the pleadings, this defense having been first raised by defendant, the matter of cooperation becomes an essential element of plaintiff's case to be proved by plaintiff.

The burden of proof in establishing lack of cooperation by the assured in a suit by the judgment creditor against the insurance company, under statutes similar to §9510-4 GC, is discussed in a note in 72 A. L. R. 1446, entitled: "Liability Insurance: Clause requiring assured's cooperation, aid and (or) assistance." Under subdivision IV of the foregoing note, with respect to burden of proof, it is declared as follows:

"Defense on the ground of the assured's violation of co-operation clause is an affirmative one on which insurer carries the burden of proof. United States Fidelity & G. Co. v. Remond, (1930) — Ala. —, 129 So. 15; Francis v. London Guarantee & Accid. Co. (1927) 100 Vt. 425, 138 Atl. 730. Somewhat differently stated, there rests upon insurer the burden of proving the facts alleged and relied upon by it as con-

stituting a breach of the clause. Cowell v. Employers' Indem. Co. (1930) — Mo. App. — 34 S. W. (2d) 705. A lack of good faith, where relied upon as a ground of defense, must be proved. Conroy v. Commercial Casualty Ins. Co. (1928) 292 Pa. 219, 140 Atl. 905—citing Roth v. National Auto. Mut. Cas. Co. (1922) 202 App. Div. 667, 195 N. Y. Supp. 865 (appeal dismissed without opinion in (1923) 235 N. Y. 605, 139 N. E. 752) infra, subd. V.v.

"The foregoing rule, or rules, is so little subject to debate as to need no further citation of cases."

See further and more recent annotations on the same subject in 98 A. L. R. 1465 at page 1468 and 139 A. L. R. 771 at page 777. The latter citation declares as follows:

"As stated in the earlier annotations, it is generally held that an assured's breach of the corporation clause being an affirmative defense is one on which the insurer carries the burden of proof."

. That the foregoing statements represent the general law, see 46 C. J. S. Insurance, Section 1321(f), as follows:

"Ordinarily, and sometimes under statute, insured's violation of the 'cooperation clause' of a liability policy is regarded as an affirmative defense which the insurance company has the burden of proving."

Attention is also called to the article on "Insurance" in **22 O. Jur. p. 854, Sec. 759,** as follows:

"Matters of Defense, Conditions Subsequent, and Exceptions.

"As a general rule, one suing on a policy of insurance need not aver in his petition any facts which are matters of defense, such as noncompliance with conditions subsequent and excepted risks. * * * Nor need conditions subsequent that are matters of defense be proven in chief or alleged in the petition, especially as the plaintiff may not be advised which condition subsequent the insurance company claims was violated. So, provisions in a policy that it shall become void, or inoperative, or that the insurer shall be relieved wholly or partially from liability, upon the happening of some event, or the doing or omission to do some act, are matters of defense, and to be available must be pleaded, and their breach alleged, by the defendant."

See also, Benoy's Ohio Insurance and Negligence Law, 1936, Sec. 699 as follows:

"Conditions subsequent such as conditions that provide that a policy shall become void or inoperative, or the insurer relieved wholly or partially from liability upon the happening of some event or doing or omission to do some act, are matters

of defense. To be availed of, the insurance company has the burden of proving a breach thereof. That is, the burden is on the defense to prove the breach of conditions by affirmative evidence."

The Ohio cases under §9510-4 GC are in line with the general law that the cooperation clause in a liability insurance policy constitutes a good defense to the insurer as against a party injured by fault of the insured seeking to recover against the insurer and that the burden of sustaining the affirmative defense that the cooperation clause has been violated rests with the defendant as it does in the case of other affirmative defenses.

Two cases decided by this Court have discussed conditions subsequent in actions under §9510-4 GC involving insurance policies. In **State Auto. Mutual Ins. Assoc. v. Friedman, 34 Oh Ap 551** (affirmed 122 Oh St 334), it was held in the fifth paragraph of the syllabus that conditions precedent must be proved by plaintiff who seeks to recover on an insurance policy, but not conditions subsequent.

In another case decided by this Court, **Medical Protect. Co. v. Light, 48 Oh Ap 508** (Motion to Certify overruled Jan. 16, 1935) an action was brought by an administratrix to recover in a malpractice action for alleged negligent treatment of plaintiff's decedent. A judgment was obtained against the doctor and action was then brought by supplemental petition against the insurance company. The insurance company set forth in its answer an alleged breach of the insurance policy with respect to attendance upon the trial and cooperation by the doctor. Under the terms of the policy, the assured had agreed to "attend, assist and cooperate in the preparation and defense of any claim or suit." This Court made the following comment:

"If the company is to avoid liability, it would be merely upon the ground that the assured * * * was guilty of a breach of a condition subsequent."

Upon review of the evidence, the court affirmed the trial court that the evidence failed to establish a breach of the condition subsequent.

See also, **Wasserman v. Zurich General Accid. & Liab. Ins. Co., 39 Oh Ap 33.**

The California statute provides that when a judgment is obtained against the assured in an action brought by the injured person, an action may be brought against the insurer on the policy "subject to its terms and limitations" by such judgment creditor. Deering's California Codes, (1950) Insurance, Sec. 11580. A federal case involving such an action

is Western Casualty & Surety Co. v. Weimar, 96 Fed. (2d) 635, C. C. A. 9, 1938. In its answer, the company set up the affirmative defenses that the assured had voluntarily assumed liability to plaintiff and had failed to cooperate with the company in the defense of the suit brought against him. The Court declared:

"Either of these defenses, if sustained by proof, would exculpate the company from liability, under condition C. of the policy * * *. The requirements imposed by the quoted paragraph are not conditions precedent. They outline conditions subsequent, affirmative matters of defense which the insurer must plead and prove in order to defeat recovery on the policy."

See similarly, State Farm Mutual Auto. Ins. Co. v. Koval, 146 F. (2d) 118. (C. C. A. 10, 1944)

It may be observed in the case now under consideration that the cooperation clause provided that "the insured shall cooperate with the company and, **upon the company's request**, shall attend hearings and trials and shall assist in effecting settlements securing and giving evidence, obtaining the attendance of witnesses." At the close of plaintiff's case in the trial court, the defendant insurance company rested. Having alleged lack of cooperation as an affirmative defense in its answer, it failed to introduce any evidence at the trial, having contented itself with asking for a directed verdict at the close of plaintiff's testimony. Giving the most favorable interpretation to defendant of plaintiff's evidence, as is required on motions for directed verdict at the close of plaintiff's case, was lack of cooperation shown by plaintiff's evidence sufficient to require the granting of defendant's motion? We think not. Plaintiff's evidence discloses that the insured was not present at the original hearing in court when judgment was obtained against the insured, but failure to appear in court is not proof of failure to cooperate. If mere failure to appear constituted proof of non-cooperation, it would be within the power of the insurance company and the assured, by acting in concert, to defeat any litigant. Here it should be stressed that there was no evidence that the assured had actual notice of the suit. Despite this fact, the regularity of the judgment against the assured was not attacked and could not successfully be attacked by the insurance company in view of §§6308-2 and 6308-5 GC, permitting service through the office of the Secretary of State, not only on non-resident automobile drivers using Ohio roads, but also, on residents who subsequently become non-residents or who conceal their whereabouts. **Hendershot v. Ferkel, 144 Oh St 112**, second

paragraph of syllabus. Whereas the insurance company had the burden of sustaining the affirmative defense of lack of cooperation by the assured, it offered no evidence in the trial court to show that the assured was ever requested at any time to cooperate or that he refused to cooperate when requested. Plaintiff's evidence did not supply this missing proof.

If any conclusions are to be drawn from failure of the assured to accept with alacrity the invitation to the office of plaintiff's attorney or from his failure to place himself in the path of a deputy sheriff for service of process, it may be suggested that these hesitations merely indicated a defendant genuinely reluctant to be sued and conforming his conduct to practices not ordinarily deemed unfriendly to the defense. There was no testimony in the trial court that the assured failed to forward to the insurance company a copy of the petition or that he failed to report the accident or failed to cooperate in other respects desired. The plaintiff had no means of knowledge on this subject and the behavior of the assured was necessarily known only to and could be testified to by the insurance company alone. Yet the latter elected to remain silent. We note from the evidence that plaintiff's attorney at every stage of the trial informed the insurance company of developments and furnished the company with a copy of the petition when suit was filed, doubtless having in mind the language of the opinion in **Hartford Accident & Indem. Co. v. Randall, 125 Oh St 581** declaring as follows (page 585):

"It must be held that by virtue of §9510-4 GC, an injured person has a potential interest and a substantial right in the policy from the very moment of his injury, and, although it does not develop into a vested right until a judgment is secured, his rights are such, even before judgment, as to entitle him to comply with the terms and conditions of the policy, and thus make them effective in his behalf in the event the insured fails to discharge his duty under the policy."

The only testimony bearing upon the matter of cooperation or lack of cooperation by the assured was that of plaintiff's attorney that he failed to locate the assured and that testimony cannot by any means establish failure of the latter to cooperate with the insurance company which, so far as the record shows, may have been in touch with the assured throughout the entire litigation in the Common Pleas Court.

The insurance company having asserted an affirmative defense which it failed to substantiate, we find no error in the judgment of the trial court prejudicial to its rights. The

judgment must be and is therefore affirmed.

Judgment affirmed.  Exc.  Order see journal.

SKEEL, PJ, DOYLE, J, concur.