ALFREDO RONDÓN, demandante y apelante, *v.* THE AETNA CASUALTY & SURETY COMPANY, demandada y apelada.

No. 5818.—*Sometido:* Enero 12, 1934. *Resuelto:* Abril 30, 1934.

*Leopoldo Feliú y Miguel Olmedo,* abogados del apelante; *Hartzell, Kelley & Hartzell* y *R. O. Fernández,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este caso se originó en la Corte de Distrito de San Juan. Alfredo Rondón por conducto de su padre con patria potestad José María Rondón demandó a The Aetna Casualty and Surety Co., una corporación dedicada al negocio de seguros organizada en el estado de Connecticut y autorizada para hacer negocios en Puerto Rico, en reclamación de $3,602.75, importe de cierta sentencia dictada contra Juan Basabe.

Según se alega en la demanda, el 13 de febrero de 1926, en Santurce, el demandante fué gravemente lesionado por la guagua "Palmira" del porteador público Basabe a consecuencia de lo cual se inició un pleito que fué fallado condenando a Basabe a pagar al demandante $3,000 como indemnización y las costas fijadas luego en $602.75. La sentencia quedó firme..

Basabe a la fecha del accidente estaba asegurado por la

demandada a virtud de "póliza de responsabilidad" expedida en febrero 14, 1925, para tener efecto hasta el medio día del 14 de febrero de 1926.

Esa "póliza de responsabilidad o fianza" para responder de los daños causados por dicho porteador público a cualquiera persona o propiedad ajenas, fué archivada en la Comisión de Servicio Público de Puerto Rico como requisito previo para la obtención del certificado de necesidad y conveniencia por el porteador, quedando la demandada obligada por ella a pagar no sólo los daños y perjuicios a que fuese condenado dicho porteador público asegurado, sino las costas, gastos e intereses a que fuere condenado dicho porteador público por razón de litigio entablado contra el mismo por daños causados a la persona y a la propiedad, según se expresa en las siguientes cláusulas de dicha póliza y del pliego de estipulaciones que forma parte de la misma, a saber: Póliza JA–3512794, de la Aetna Casualty & Surety Co. A. (1) la responsabilidad de la compañía a virtud de esta póliza queda limitada según se expresa en el párrafo *A* del pliego de estipulaciones, los cuales límites serán aplicables a cada automóvil cubierto por esta póliza. (2) En adición a los límites expresados en el párrafo *A*, del pliego de estipulaciones, la compañía pagará todos los gastos resultantes de reclamaciones al asegurado por motivo de pérdida según queda expresado, y todas las costas impuestas al asegurado, junto con intereses, en cualquier procedimiento legal defendido por la compañía de acuerdo con los pactos y condiciones de esta póliza, y todos los intereses que se devenguen después de anotada la sentencia hasta la fecha del pago sobre la parte de dicha sentencia que no exceda de los límites de la responsabilidad de la compañía según se expresa en el párrafo *A* de las estipulaciones; pero el asegurado no asumirá voluntariamente responsabilidad alguna; ni dicho asegurado, sin el consentimiento por escrito de la compañía, incurrirá en gasto alguno o transigirá reclamación alguna, a no ser a expensas propias; siempre que la compañía lo solicitare, el asegurado

ayudará a obtener informes y prueba y la comparecencia de testigos.—Pliego de estipulaciones.—Cláusula I.—Responsabilidad.—Pérdida o gastos, o ambas cosas, resultantes de reclamaciones al asegurado debido a lesiones corporales o muerte, o ambas cosas, accidentalmente causadas, o que se alegue haber sido causadas, a cualquier persona (excepto empleados del asegurado) por razón de la posesión o uso del automóvil descrito; disponiéndose, que la responsabilidad de la compañía por pérdida en un accidente que resulte en lesiones corporales o muerte, o ambas cosas, a una persona, queda limitada a la cantidad expresada en el pacto II, párrafo A, y, con sujeción al mismo límite para cada persona, la responsabilidad total por pérdida motivada por un accidente cualquiera está limitada a la cantidad expresada en Pactos I–II, párrafo A.—Pacto I (A)—La responsabilidad de la compañía a virtud de los siguientes riesgos, según antes se definen y con sujeción a todas las condiciones contenidas o endosadas en esta póliza, está limitada a las cantidades que no excedan las de los seguros aquí especificados y al período o término de la póliza expresado como sigue:—II.—Responsabilidad y consideración.—Responsabilidad por daño personal: Límite por cada persona, $5,000; por daño a la propiedad ajena, $3,000; Total por accidente: $13,000. Y esta póliza es expedida por la compañía mediante el pago hecho a ella por el asegurado de la suma de $300.

Esta póliza fué expedida por la compañía aseguradora demandada, The Aetna Casualty & Surety Co., originalmente a Agustín Aponte, siendo posteriormente, en 29 de junio, 1925, endosada por dicha compañía al porteador público Juan Basabe.

El demandante Alfredo Rondón no era empleado del porteador público Juan Basabe en la fecha del accidente arriba indicado. Los abogados de la compañía aseguradora demandada defendieron al asegurado Juan Basabe en todos los procedimientos en corte hasta el momento del juicio, siendo aquéllos los Sres. Hartzell, Kelley & Hartzell.

La póliza estaba en vigor en la fecha del accidente que dió origen a la sentencia de la corte antes aludida, había sido aprobada por la Comisión de Servicio Público de Puerto Rico, previo dictamen del Attorney General, de febrero 24, 1925, y se hallaba archivada en la secretaría de dicha comisión, con arreglo al reglamento de la misma de junio 30, 1925, como documento indispensable para la obtención del certificado de necesidad y conveniencia por todo porteador público.

La cantidad que se reclama a virtud del fallo de la corte de distrito de San Juan de fecha 9 de diciembre, 1926, contra el porteador público Juan Basabe, no ha sido satisfecha ni en todo ni en parte, ni por el porteador público Juan Basabe, ni por ninguna otra persona o entidad a su nombre.

El contrato de seguro se hizo en consideración al pago de la prima de $300 verificado por el asegurado a la compañía aseguradora.

Emplazada la demandada, compareció alegando las siguientes excepciones previas:

"1.—Que la demanda no aduce hechos suficientes para determinar una causa de acción.

"2.—Que la demanda es ambigua y también dudosa (uncertain) en las alegaciones de sus párrafos cuarto y quinto, porque impropiamente se hacen en ellos alegaciones alternativas sobre la naturaleza de cierto contrato de seguro, calificándolo primero como una póliza de seguridad y luego como una fianza, debiendo el demandante, que alega conocer el contenido de dicho contrato, alegar su naturaleza en forma más precisa y específica."

Oyó la corte a ambas partes y declaró finalmente con lugar las excepciones concediendo al demandante diez días para enmendar.

Presentó el demandante su demanda enmendada alegando los mismos hechos ya alegados y además que en el pleito que siguiera contra Basabe se expidió mandamiento de ejecución de sentencia el 24 de noviembre de 1930 y fué devuelto con la

manifestación del márshal de que Basabe carecía de bienes, y que la póliza contenía la siguiente

"Cláusula de insolvencia.—(2) Se entiende y se acuerda que la insolvencia o bancarrota del asegurado u otras personas con derecho al beneficio nacido de esta póliza no relevará a la compañía del pago de daños por lesiones o pérdida ocasionados durante la vigencia de este seguro. En caso que una orden de ejecución de sentencia contra el asegurado u otro demandado se devuelva sin haber sido satisfecha en una acción entablada por el lesionado (o si la muerte resultare a causa del accidente, por la parte a quien corresponda el derecho de acción) con motivo de tal insolvencia o bancarrota, podrá mantenerse una acción por el lesionado, o sus sucesores, contra la compañía por el importe de la sentencia en dicha acción, siempre que no exceda el límite de la póliza."

También se alegó que el dictamen del Attorney General sobre la póliza fué así:

"He examinado las fianzas No. 6770,—3512551,—3512477, y 3512794, expedidas por la Porto Rican American Ins. Co. y la Aetna Casualty & Surety Co., para garantizar a los señores Andrés Medina, Bou, Rivera & Co., y Agustín Aponte en el cumplimiento de la responsabilidad que como porteadores públicos les cobija por los preceptos de la regla III del Reglamento para vehículos de motor, aprobado por la Comisión de Servicio Público en 3 de junio, 1924, y encuentro que dichas fianzas se ajustan a la ley en cuanto a su forma y ejecución."

Y se acompañó a la demanda copia certificada de la póliza en cuestión.

Volvió la demandada a excepcionar la demanda y la corte a declarar con lugar sus excepciones con permiso para enmendar. De la resolución de la corte se transcriben los siguientes párrafos:

"La demandada excepcionó la demanda, alegando no aducir hechos suficientes para constituir una causa de acción. Funda esta insuficiencia en el hecho de no establecerse nexo jurídico entre demandante y demandada el libramiento de la póliza y pronunciamiento de la sentencia, y que la falta de pago de la sentencia por insolvencia del asegurado, es hecho ocurrido después de iniciado este pleito, y su alegación varía la causa de acción.

''En realidad, se alega un hecho ocurrido después de iniciado el litigio pero antes de enmendarse la demanda, y no varía la causa de acción.

''Pero ¿puede ejercitarse esa acción sin el cumplimiento de las condiciones precedentes? Indudablemente no. La aseguradora tenía interés real en intervenir y estaba asistida del derecho de intervenir en la acción en la cual se estableció la responsabilidad de su asegurado y se tasó el importe de los daños. La defensa del asegurado por la compañía es uno de los pactos y condiciones de la póliza. No se alega que se le notificara el litigio, ni se le hizo parte del mismo. El hecho de que los abogados de la compañía aseguradora fueran los que defendieran al asegurado nada significa, si la comparecencia y asistencia de ellos no fué autorizada por la aseguradora. La inobservancia de esa condición a lo menos que puede obligar al demandante es a repetir la evidencia, ya que la demandada tenía derecho al defender al asegurado, a tener su día en corte.

''El demandante estima que el contrato es uno de fianza, mientras que la demandada sostiene que es uno de seguro. El documento forma parte de la demanda. No importa cómo se le llame, sino lo que del mismo resulta.

''La corte entiende que dados los términos del contrato es uno de seguro: una póliza.

''En las condiciones generales de la póliza, a que se refiere la demanda, bajo el epígrafe 'limitación de responsabilidad,' Cláusula 'A', se provee que la compañía pagará las reclamaciones procedentes de cualquier procedimiento legal defendido por la compañía, y además se provee que 'siempre que la compañía lo solicitare el asegurado ayudará a obtener informes y pruebas y la comparecencia de testigos', así como a practicar transacciones y a la tramitación de apelaciones; y bajo el epígrafe 'Reclamaciones y Pleitos contra el asegurado', Cláusula 'C', se provee que el asegurado cooperará con la compañía en todo tiempo para facilitar la resolución de reclamaciones y pleitos. En ninguna parte se alega que el asegurado cumpliera con las condiciones de la póliza.

''Por otra parte, ya se considere que el Reglamento de la Comisión de Servicio Público aplicable es el de 3 de junio 1924, y no el de 30 de junio 1925, que se dice por el demandante fué el que consideró el Tribunal Supremo en Aetna Casualty & Surety Co. v. Rondón, 41 D.P.R. 101, como lo que se prestó fué una póliza de seguro, según se desprende incuestionablemente del documento en sí, aunque el Procurador General le llamara 'fianza' en su dictamen, el deman-

dante está sujeto a las cláusulas y condiciones estipuladas al demandar basado en la misma.''

Una segunda demanda enmendada fué archivada. Contiene los hechos alegados anteriormente y se consigna expresamente en ella que al comenzar Basabe su negocio estaba en vigor la regla tercera del reglamento de la Comisión de Servicio Público de junio 3, 1924, y que en cumplimiento de esa regla y sujeto· a la misma fué que Basabe radicó en la Comisión su fianza o póliza que la comisión aceptó previo dictamen favorable del Attorney General.

La demandada pidió a la corte que eliminara la última demanda enmendada por no serlo en verdad y que sobrese yera en el pleito.

La corte resolvió la cuestión planteada así:

''En el caso de Sucesión Vélez et al. vs. Vélez, et al., 23 D.P.R. 617, se resolvió que una moción para que se elimine una demanda enmendada ·y para que se dicte sentencia decretando el sobreseimiento del pleito, fundada en que es una reproducción exacta de la original desestimada y que no corrige los errores o equivocaciones existentes, equivale a una excepción; y que cuando una corte concede permiso a una parte para presentar una alegación enmendada, la nueva no puede ser una reproducción exacta de la anterior o con ligeros cambios que en verdad no corrijan los errores o equivocaciones señalados.

''En efecto, en la segunda demanda enmendada de este caso, que consideramos, si bien se omiten algunas palabras y se agregan otras, en nada alteran el alcance de la primera demanda enmendada. Es prácticamente una reproducción de la anterior, sin cambio sustancial alguno, que constituya un cumplimiento de la resolución de marzo 21, 1931.

''La moción del demandado equivale a una excepción a la segunda demanda enmendada y no aduciendo ésta, como tampoco la anterior, hechos suficientes para determinar una causa de acción, debe sostenerse dicha moción.

''El demandante manifiesta en su alegato que 'es cierto que en el litigio de este demandante contra el asegurado Juan Basabe, el Tribunal Supremo resolvió un incidente en el que declaró doctrina aparentemente adversa a nuestra contención, pero en aquel incidente no se resolvió nada relacionado con la cuestión que debatimos ahora.' La teoría del demandante ahora es que por làs cláusulas o condiciones

de la póliza, respecto a la cláusula de insolvencia y la Regla de la Comisión de Servicio Público, de 3 de junio 1924, está autorizado para dirigirse directamente contra la compañía, con la sola base de la sentencia dictada contra el asegurado. Pero es que de la póliza aparece que la compañía convino 'en asegurar al asegurado (Basabe) y sus representantes legales, con sujeción a los términos y condiciones de la presente y de los endosos a ella adheridos,' contra los riesgos expresados en el pliego de estipulaciones anexos a la póliza, proveyéndose en el pliego de las estipulaciones que la responsabilidad de la compañía será por 'pérdida o gastos, o ambas cosas, resultantes de reclamaciones al asegurado.' La compañía no se obligó a pagar por el asegurado, sino a pagar al asegurado la pérdida o gastos que éste tuviese por reclamaciones entabladas contra él, y, desde luego, sujeto ello al cumplimiento por el asegurado de las condiciones de la póliza.

"El demandante, en cumplimiento de la resolución de la corte, no alegó en la demanda enmendada que el asegurado hubiera cumplido con todas las cláusulas y condiciones de la póliza, para tener derecho a reclamar basado en la misma y por tanto no establece hechos suficientes para constituir una causa de acción. Es regla que cuando el asegurado deja de cumplir con las condiciones de la póliza, cesa la responsabilidad de la compañía aseguradora, y no subsiste derecho alguno de acción por parte de la tercera persona perjudicada. Schoenfeld v. New Jersey Fidelity & Plate Glass Ins. Co., 203 App. Div. 796, 192 N. Y. Supp. 606; Roth vs. National Automobile Mut. Casualty Co., 202 App. Div. 667, 195 N. Y. Supp. 865, Schroeder v. Columbia Casualty Co., 126 Misc. 205, 213 N. Y. Supp. 649."

Dictada sentencia de conformidad con las anteriores conclusiones y consideraciones, apeló de ella el demandante habiéndose presentado por ambas partes alegatos reveladores de un amplio estudio de todas las cuestiones envueltas en el litigio.

La primera cuestión que debe considerarse y resolverse en este caso es la de si ha sido ya prejuzgado por el de *Aetna Casualty & Surety Co.* v. *Rondón,* 41 D.P.R. 101, en el que esta corte dijo:

"Parece que el demandante descansó en el Reglamento de la Comisión de Servicio Público de junio 30, 1925, que impone a los dueños de automóviles de servicio público como lo era el del deman-

dado que le causó el daño, la prestación de una póliza de responsabilidad 'que responderá de la indemnización que se adjudique por el tribunal correspondiente a cualquier persona que sufra lesión, daño o perjuicio en su persona o intereses, o a sus herederos en caso de muerte, por virtud de cualquier accidente ocurrido y debido al uso descuidado, negligente o defectuoso del vehículo de motor utilizado como porteador público, ya sea éste operado directamente por el concesionario o por cualquiera de sus agentes, empleados o subalternos,' pero esa regla no es aplicable a este caso por haber comenzado a regir, según sus propios términos, después de ocurrido el accidente. Y aunque lo fuera no sería suficiente para sostener por sí sola la orden de embargo sin haberse demostrado que la . póliza en efecto se prestó por la Aetna, que por sus cláusulas el demandado estaba autorizado para dirigirse directamente contra ella con la sola base de la sentencia dictada contra su asegurado y que se había dado su día en corte a la aseguradora citándosele en forma, circunstancias que no sólo no se probaron sino que no se alegaron debidamente.''

Ambos casos guardan la más estrecha relación, pero como aquí se ha establecido un pleito independiente en el que se está dando a la demandada su día en corte, en el que conocemos la póliza y en el que se invoca un Reglamento distinto de la Comisión de Servicio Público, debemos considerarlo y resolverlo por sus propios méritos.

Sostiene el apelante que cuando se otorgó la póliza y cuando ocurrió el accidente estaba en todo su vigor el reglamento de la Comisión de Servicio Público aprobado en junio 3, 1924, cuya regla tercera es como sigue:

"Regla III.—*Fianza para casos de accidentes y cancelación del certificado.*—La Comisión antes de autorizar la expedición del certificado de necesidad y conveniencia exigirá del peticionario la prestación de una fianza hipotecaria o por una compañía de seguros legalmente autorizada para hacer esta clase de negocios en Puerto Rico, por una cantidad que fijará la Comisión y que en ningún caso será menor de tres mil (3,000) dólares por cada vehículo y que responderá de la indemnización que se adjudique por el tribunal correspondiente a cualquier persona que sufra lesión, daño o perjuicio en su persona o intereses, o a sus herederos en caso de muerte, por virtud de cualquier accidente ocurrido y debido al uso descuidado, negligente o defectuoso del vehículo de motor utilizado como porteador público,

ya sea éste operado directamente por el peticionario o por cualquiera de sus agentes, empleados o subalternos. Tal fianza será aprobada por la Comisión de Servicio Público, después de examinada en cuanto a su forma y ejecución por el Attorney General de Puerto Rico, y archivada en la oficina del Secretario de la Comisión, antes de que el vehículo a que se contraiga dicha fianza se ponga en el servicio.

"(a) Al ocurrir cualquier accidente la Comisión podrá, previa investigación, revocar el certificado de necesidad y conveniencia expedido sin que dicha revocación afecte la fianza prestada, la que continuará en toda su fuerza y vigor hasta que las cortes resuelvan respecto al accidente."

Y que conteniendo como contiene la póliza una cláusula que dispone que: "Si cualquiera de los términos o condiciones de esta póliza estuviere en conflicto con la ley de Puerto Rico tales términos y condiciones no tendrán efecto en cuanto no concuerden con dicha ley. Cualquiera disposición específica del estatuto vigente en Puerto Rico reemplazará a cualquier condición de esta póliza que fuere incongruente con tal estatuto," la regla tercera de la comisión forma no sólo parte de la póliza si que predomina en caso de conflicto y convierte la póliza en una de responsabilidad equivalente a una fianza.

La parte apelada por el contrario sostiene que la póliza por ella expedida no se convirtió jamás en fianza, 1, porque la Comisión de Servicio Público no tenía facultad para dictar una regla como la que se invoca; 2, porque dicha regla fué derogada por la de junio 30, 1925, de la misma comisión; 3, porque dejando la referida regla la forma y otorgamiento del contrato al juicio del Procurador General, la póliza quedó aprobada en la forma en que fué expedida por la demandada, y 4, porque la repetida regla no da a los lesionados el derecho a reclamar directamente a la compañía aseguradora.

La primera cuestión que suscita la apelada quedó resuelta en su contra en el caso de *Santiago* v. *Comisión de Servicio Público,* 37 D.P.R. 500, como ella misma reconoce en su alegato. Los argumentos que expone para sostener que esta corté fué demasiado lejos, no nos convencen, quedando

en su consecuencia en pie la jurisprudencia establecida, a saber:

"Dos proposiciones abarca el problema. Se alega por el demandante que la Comisión, de acuerdo con los propios términos del artículo 38 del Acta Orgánica de 1917 tal como estaba redactada antes de la enmienda, sólo tenía facultades para regular el servicio de porteadores públicos por ferrocarril, y se sostiene además que aunque las tuviera para regular toda clase de porteadores, jamás esas facultades alcanzarían a conceder un monopolio como lo ha concedido por la franquicia.

"Examinemos la proposición primera. Es cierto que por el artículo 38 del Acta Orgánica se confiere expresamente a la Asamblea Legislativa poder para decretar leyes relativas a la reglamentación de los precios, tarifas y servicio de los porteadores públicos por ferrocarril en Puerto Rico, y a la Comisión para poner en ejecución leyes de ese carácter mediante reglamentación adecuada, pero a nuestro juicio tal disposición que aparece en el último párrafo del artículo, se adoptó como una consecuencia de lo dispuesto en el párrafo anterior en relación con la no aplicabilidad en Puerto Rico de la Ley sobre comercio entre estados y sus enmiendas y las leyes sobre aparatos de seguridad a que se refiere el párrafo inmediatamente anterior.

"Si se examina el comienzo del artículo 38 se verá cuán amplio es. Prescribe que 'Toda concesión de franquicias, derechos y privilegios de carácter público o cuasi público, será otorgada por una Comisión de Servicio Público . . .' Y la Legislatura de Puerto Rico, que en este respecto tiene facultades similares a las de cualquier estado de la Unión con la única limitación de que sus leyes pueden ser anuladas por el Congreso, desde el propio año de 1917 aprobó la Ley No. 70 de que antes hemos hecho mención y por ella todas las compañías que actuaran como porteadores públicos en general fueron sometidas a la jurisdicción de la Comisión. Quizás sea conveniente citar el artículo 52 de la dicha Ley No. 70 que comienza así: 'La Comisión tendrá poder para otorgar franquicias, derechos, privilegios o concesiones para fines públicos o cuasi públicos incluyendo el derecho de usar o cruzar carreteras, caminos o cauces de agua públicos . . .

"En el caso de Kane vs. State of New Jersey, 242 U. S. 160, la Corte Suprema de los Estados Unidos dijo:

" 'En ausencia de legislación nacional sobre la materia, la autoridad del estado para reglamentar el uso de sus carreteras por

vehículos de motor que trafican en el comercio interestadual es aplicable tanto a los que pasan a través del estado como a aquéllos que trafican solamente dentro del mismo.'

"No era necesaria, pues, la autorización especial del Congreso. La facultad residía en la Legislatura a la cual el Congreso, artículo 25 de la Ley Orgánica, le concedió todos los poderes legislativos locales en Puerto Rico, y la Legislatura pudo delegar sus poderes en la Comisión.

" 'El poder para hacer leyes está investido en la legislatura, según las constituciones de todos los estados, y se ha creído que es muy dudoso que el departamento legislativo pueda delegar en cualquier otro cuerpo o autoridad el poder para conceder franquicias, en vista de que el ejercicio de tal autoridad envuelve una alta confianza creada y conferida para beneficio de aquellos que la han concedido, y tal confianza se le confiere a la legislatura. Sin embargo, parece estar ya resuelto que las legislaturas de los estados no solamente pueden ejercer su soberanía directamente, sino que pueden delegar cualquier parte de ella a cuerpos legislativos inferiores que a su juicio sea prudente para fines locales.' 12 R.C.L. 187.

"La circunstancia de que al enmendarse el artículo 38 por la Ley Butler las palabras 'porteadores públicos por ferrocarril' se sustituyeran por 'todos los porteadores públicos,' no puede tener más alcance que el de desvanecer cualquier duda que pudiera suscitarse. No creemos que tenga aplicación a este caso la máxima '*Expressio unius est exclusio alterius,*' pues ya dijimos que el párrafo de que se trata tiene su explicación lógica como complemento del anterior. De todos modos, bien puede sostenerse que regía ya la enmienda cuando actuó la Comisión, aunque estuviera constituída en la forma en que lo estaba.

"La segunda proposición es la que abarca el campo de investigación más amplio."

■ La segunda cuestión levantada fué objeto de amplia discusión en alegatos adicionales presentados por los abogados de ambas partes en noviembre 28, 1933, y enero 10, 1934. No es fácil de resolver. Trataremos de desentrañar la verdad tal como podamos entenderla.

En junio 3, 1924, la Comisión de Servicio Público aprobó el *Reglamento para la explotación de vehículos de motor de servicio público que funcionen como porteadores públicos entre puntos fijos y rutas determinadas.*

No hay cuestión con respecto a la vigencia de ese reglamento cuando la póliza de que se trata en este caso fué expedida, informada por el Procurador General y archivada con la Comisión. Tampoco la hay sobre el hecho de que esa póliza era la que estaba vigente cuando ocurrió el accidente origen de esta reclamación. Pero se sostiene por la parte apelada que cuando el accidente ocurrió—febrero 13, 1926— el *reglamento* de 1924 había sido derogado por el de 30 de junio de 1925 de la misma comisión titulado *reglamento para la explotación de vehículos de motor de servicio público que funcionen como porteadores públicos.*

Comparando ambos reglamentos se observa que el primero, o sea el de 1924, se refiere exclusivamente a vehículos de motor usados como porteadores públicos entre puntos fijos y rutas determinadas, esto es, a los llamados "guaguas," y que el segundo, o sea el de 1925, comprende todos los vehículos de motor de servicio público que funcionen como porteadores públicos, esto es, tanto los llamados guaguas como cualquiera otra clase de vehículos siempre que sean de motor.

La regla tercera del reglamento de 1924 tuvo el claro propósito de garantizar al público en general exigiendo al porteador como requisito previo la prestación de una fianza hipotecaria o por una compañía de seguros para responder de la indemnización que pudiera adjudicarse por un tribunal a cualquier persona que sufriera a virtud del uso descuidado, negligente o defectuoso del vehículo.

La regla tercera del reglamento de 1925 es similar a la del 1924, pero contiene un *disponiéndose* que dice:

". . . la prestación de fianza o póliza de responsabilidad por parte de los automóviles de servicio público a que antes se hace referencia en este reglamento no se exigirá hasta julio 1, 1926."

Y es en ese *disponiéndose* y en la cláusula derogatoria contenida en el reglamento de 1925, en que se basa la parte apelada para sostener que la regla tercera del reglamento no estaba en vigor a la fecha del accidente y por tanto que en

esa fecha no existía regla alguna que exigiera la prestación de fianza por parte del porteador para garantizar las personas que tuvo en mente la comisión en 1924.

Examinemos los términos de la cláusula derogatoria. Están contenidos en la regla diez y siete del Reglamento de 1925 y son así (itálicas nuestras):

"El presente reglamento deroga cualquier otro anterior en aquellas partes *que estuvieren en conflicto,* así como cualquiera otra regla o reglamentación dictada con prioridad a la aprobación del mismo, y deberá publicarse en dos periódicos de circulación general en Puerto Rico; *Disponiéndose,* que la derogación por cualquier tribunal de cualesquiera de las reglas de este Reglamento no afectará la vigencia de las demás reglas."

¿Está en conflicto la exigencia de la regla tercera del reglamento de 1924 en cuanto a la prestación de fianzas por parte de los porteadores públicos entre puntos fijos y rutas determinadas como lo era Basabe, con el *disponiéndose* de la regla tercera del Reglamento de 1925?

A nuestro juicio, habidas en consideración todas las circunstancias concurrentes, la pregunta debe responderse en la negativa.

En el cumplimiento de sus deberes y siguiendo la línea de conducta seguida en los estados del continente, la comisión comenzó por dictar reglas tendentes a garantizar al público aplicándolas a aquellos porteadores que consideró de mayor riesgo. Convencida luego de que el riesgo se extendía a todos, a todos exigió la garantía. La regla tercera del Reglamento de 1925 obedece al mismo propósito que la regla tercera del reglamento de 1924, sólo que abarca un campo mayor. Se concibe perfectamente que a la nueva clase de vehículos de motor que se incluía se le diera un plazo para cumplir con la exigencia, pero no se concibe que la comisión fuera a dejar sin protección al público en relación con aquella otra clase de vehículos—las guaguas—que ya había sido reglamentada y había cumplido con los requisitos exigidos por la reglamentación, que es el caso de autos.

■ La tercera y cuarta cuestiones se estudiarán y resolverán conjuntamente.

Conocemos el dictamen del Procurador General emitido en cumplimiento de la regla. Dicho funcionario tuvo la oportunidad de hacer que todo quedara esclarecido a fin de que se diera cumplimiento al verdadero propósito de la comisión. No lo hizo así. O no se penetró bien de dicho propósito o examinó de modo muy superficial el documento. Y así pasó éste en la forma en que fué redactado, de la cual no puede prescindirse a los efectos de. fijar las obligaciones contraídas por las partes en el mismo.

Creemos sí que debe interpretarse partiendo de la base de la vigencia de la regla y por tanto que debe resolverse que la compañía contrajo la directa obligación de pagar, hasta el límite fijado en la póliza, la indemnización que se pudiera adjudicar a cualquier persona que sufriera lesión por el tribunal correspondiente, pero creemos también que esa obligación está condicionada a las estipulaciones contenidas en la póliza. La compañía quedó obligada para con el público pero en la forma que aparece de la póliza, visada por el Procurador General y aceptada por la comisión. Existe nexo jurídico entre el demandante y la demandada, pero ese nexo está regulado por los términos de la póliza.

Hemos estudiado la jurisprudencia que ambas partes citan, no sólo citan si que estudian en relación con los hechos de los casos en que fué establecida, y a nuestro juicio tratando de armonizarla en lo posible para aplicarla a los hechos de este caso, sostiene la conclusión a que hemos llegado, que dispone de la cuarta cuestión levantada por la parte apelada en la negativa y en la afirmativa de la tercera.

La conclusión a que hemos llegado acerca de que existe un nexo jurídico entre las partes en este caso, está sostenida además por la propia cláusula de insolvencia de la póliza por virtud de la cual se autoriza el mantenimiento de una acción por el lesionado contra la compañía después de haber obtenido sentencia contra el asegurado y de haberse devuelto sin

satisfacerse la orden de ejecución de dicha sentencia a causa de la insolvencia del asegurado. Pero también en tal caso el mantenimiento de dicha acción está predicado a las estipulaciones del contrato.

La jurisprudencia sobre la materia es amplísima. De todos los casos que hemos considerado nos limitaremos a citar uno que en forma clara y vigorosa y tomando en consideración todos los intereses envueltos, fija la norma a que debe ajustarse la resolución de cuestiones como la aquí suscitada. Nos referimos al de *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271, en el que hablando por la Corte el Juez Sr. Cardozo se expresó así:

"Se arguye que el efecto de la sección 109 de la Ley de Seguros es crear una obligación original en favor del perjudicado por el importe de cualquier sentencia que se dicte contra el tenedor de la póliza independientemente del incumplimiento de cualquier condición entre asegurador y asegurado. No vemos que exista base para tal resolución. (Véase Schoenfeld v. N. J. Fid. & Plate Glass Ins. Co., 203 App. Div. 796, 800; Roth v. Nat. Auto Mut. Cas. Co., 202 App. Div. 667, 669; Lorando v. Gethro, 228 Mass. 181, 185, 186). De conformidad con los términos expresos del estatuto, la acción debe ser 'entablada por la persona lesionada . . . contra tal corporación bajo los términos de la póliza.' Si pudiera hacerse caso omiso de los términos de una póliza, los aseguradores estarían impotentes para defenderse de cualquier picardía o embrollo. Entonces se les haría responsables aunque no se les hubiese notificado la reclamación ni se les hubiese dado oportunidad con razonable prontitud para investigar los méritos de la misma. (Véase Lorando v. Gethro, 228 Mass. 181, 185). El demandante sostiene que un tenedor de una póliza en estado de quiebra que se confabule con un asegurador podría negarse a cooperar, permitiendo así al asegurador burlarse del remedio estatutario. De igual modo la demandada puede argüir que un asegurado en estado de quiebra podría confabularse con el reclamante a fin de presentar al asegurador una responsabilidad ficticia. El estatuto surgió a consecuencia de un daño claro. (Véase Lunt v. Aetna Ins. Co., 253 Mass. 610; Roth v. Nat. Auto Mut. Cas. Co., supra). Antes de su aprobación la insolvencia del asegurado tenía el efecto de exonerar al fiador. La póliza era una de indemnización contra cualquier pérdida sufrida por el principal, y éste no podía

sufrir pérdida alguna si no estaba en condiciones de pagarla. El efecto del estatuto es conceder al perjudicado una causa de acción contra el asegurador por el mismo remedio que tendría un principal solvente que trata de obtener indemnización y reembolso después que la sentencia ha sido pagada. La causa de acción no es menor, pero tampoco es mayor. El asegurado y el reclamante tienen que acogerse a las condiciones del contrato.''

La situación no es enteramente igual en este caso a la del caso de Nueva York porque aquí no existe el estatuto que fué interpretado allí, pero ya dijimos que atendidas todas las circunstancias concurrentes a lo más que podía llegarse era a autorizar la acción directa del lesionado contra la compañía sobre la base de la sentencia obtenida por aquél contra el asegurado pero tomando en consideración las estipulaciones hechas constar en el propio documento que estimó suficiente el Procurador General y aceptó la comisión.

Se trataba entonces de algo nuevo que ha ido después perfeccionándose a virtud de leyes y reglas que no dejan lugar a dudas.

De acuerdo con la recomendación del Procurador General de junio 24, 1927, las pólizas que la comisión aprueba deben contener una cláusula que dice:

''Es convenido y entendido que bajo esta póliza cualquier persona (excepto el chauffeur y cobrador del vehículo) quien con motivo o a causa del funcionamiento o manejo del vehículo o vehículos que en esta póliza se especifican, sufra lesiones, daños y perjuicios en su persona o propiedad, puede, a su elección, establecer acción en la Corte correspondiente contra el dueño del vehículo o contra la compañía aseguradora o contra ambos conjuntamente, a fin de obtener indemnización por las lesiones, daños o perjuicios sufridos; entendiéndose que en caso de muerte de la persona lesionada o perjudicada, sus herederos podrán establecer dicha acción.

''Se conviene y entiende además, que ninguna falta, culpa o negligencia por parte de/o imputable al dueño, chauffeur o cobrador del vehículo o vehículos comprendidos en esta póliza, por no haber cumplido con algún requisito de esta póliza o de algún otro modo, será motivo para discutir esta póliza en lo que respecta o concierne a la persona lesionada o perjudicada.''

Y la sección 175 de la Ley No. 66 de 1921 (pág. 649) conocida por Ley de Seguro de Puerto Rico quedó enmendada por la Legislatura en 1929, de modo que lea como sigue:

"Sección 175.—Será ilegal toda cláusula en un contrato de seguro que impida al asegurado el derecho de reclamar en los tribunales de justicia, en cualquier momento después de ocurrido el accidente, contra el cual se hizo el seguro, el importe de cualquier pérdida sufrida y que hubiere sido objeto de dicho seguro. Cuando el causante de los daños estuviere asegurado contra el accidente que produjo la pérdida o los daños y en el caso en que una póliza de seguro se hubiere expedido para beneficiar a un tercero, la acción para reclamar la indemnización que proceda, podrá presentarse conjuntamente contra el asegurado y la compañía aseguradora. El tribunal determinará no sólo la responsabilidad de la compañía, sino también el alcance de la pérdida."

Tratar de interpretar el contrato celebrado en este caso en el sentido de que la póliza a virtud de la regla tercera del reglamento de 1924 no sólo responde al lesionado directamente, si que puede prescindirse al exigir esa responsabilidad de si el asegurado cumplió o no con sus obligaciones para con el asegurador, sería bajo las circunstancias concurrentes, repetimos, claramente injusto para con el asegurador.

Creemos, sin embargo, que no deben cerrarse por completo las puertas a la reclamación del demandante, ya que quizá pueda encontrarse en condiciones de enmendar finalmente su demanda alegando específicamente que la sentencia que obtuvo a su favor lo fué en un pleito en el que el asegurado cumplió sus obligaciones para con su asegurador y en el que si éste no se defendió fué porque no quiso hacerlo o porque no tenía una defensa meritoria.

*Debe, pues, modificarse la sentencia recurrida concediendo al demandante quince días para enmendar su demanda y así modificada confirmarse.*

El Juez Asociado Sr. Wolf opina que la sentencia debe confirmarse sin modificación alguna.